## City of Louisville v. Metropolitan Realty Company.

(Decided February 1, 1916.)

### Appeal from Jefferson Circuit Court (Division No. 3).

1. Municipal Corporations—Abutting Owners—Duty to Keep Sidewalk in Repair.—When it is the legal duty of an abutting property owner to a sidewalk to keep the sidewalk at the particular place in repair, such owner is liable over to the city for a failure to perform this duty, and when the city gave notice of the pendency of a suit filed against it for injuries growing out of such non-repair, such abutting property owner is bound by the judgment against the city in that case.

2. Municipal Corporations—Abutting Owners—Duty to Keep Sidewalk in Repair.—The general rule is that an abutting property owner is under no obligation to maintain or keep in repair sidewalks along in front of his premises, but if he maintains a servitude upon, across or under such sidewalk for the exclusive benefit of his property, it is his duty to maintain and keep in repair such contrivance constituting the servitude, and if some member of the public while exercising ordinary care is injured by reason of a failure of such abutting property owner to properly maintain and keep in repair such servitude, the abutting owner is liable for the traveler's injuries, and if the city should be sued or be compelled to pay anything therefor, the abutting owner in a proper procedure can be made to pay the city any sum which it was thus compelled to pay.

3. Municipal Corporations—Abutting Owners—Duty to Keep Sidewalk in Repair.—Where an abutting property owner either creates or appropriates and uses for his own benefit. a drain

pipe crossing the sidewalk to which drain pipe he has connected the down spouts to his adjacent buildings, the drain pipe constitutes such a servitude for his exclusive benefit as that he must keep it in reasonable repair so as to enable the persons using the walk to travel over it with safety, while themselves in the exercise of ordinary care.

W. J. O'CONNER and PENDLETON BECKLEY for appellant.

KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On the 26th day of January, 1913, one Lewis Roehrig, while traveling afoot on the north side of Main street between 25th and 26th street, in the city of Louisville, sustained injuries by reason of defects in the sidewalk for which he afterwards brought suit against the city and recovered a judgment against it for $500, which was paid by the city, and at the time of payment, the judgment, interest and court costs amounted to $563.95. This did not include any sum for attorney's fees, or for any other special service necessary in the defense of the suit.

The appellee, Metropolitan Realty Company, was the owner of the property abutting on the street at the place where the injury occurred, and the city claiming that it was the primary duty of such company to have kept the sidewalk in repair at that place, gave notice to it of the pendency of the suit by Roehrig, but it ignored this notice and made no effort to defend that suit. The proof in that case showed the following facts: The plaintiff therein was using the sidewalk as a walkway and exercising ordinary care at the time and there had been placed across the sidewalk running from the property of appellee a metal drain pipe with some kind of a metal covering, the top of which covering was presumed to be upon the same surface as the remaining portion of the walk, but this covering had from rust or other causes gotten out of repair and holes had appeared therein, and that Roehrig stepped, either into this drain pipe, or excavation which was so covered, or got his foot hung in some of the holes of the covering by means of which he fell and sustained the injuries for which he sued. The drain pipe extended from the guttering at the curbing to the property of the appellee and at the end it was connected with a down pipe which con-

ducted the water from the roof of the appellee's building. This drain pipe across the walk was used by no other persons, or for the benefit of no other property except that of appellee.

Upon a trial of this case there was an agreed statement of facts filed during the trial, which, without caption or signatures, is as follows:

"It is hereby stipulated and agreed by the parties hereto that the following state of facts existed upon the 26th day of January, 1913, and subsequent thereto, viz.:

"The defendant, the Metropolitan Realty Company, owned the real estate in front of which the plaintiff, Louis Roehrig, was injured, as claimed by him in action No. 77962, Louis Roehrig v. City of Louisville; and that the drain pipe in the public sidewalk in front of the property mentioned was connected with the down spouts attached to the house located on the said property and carried water from these down spouts alone, and did not connect with down spouts on any other property or drain water from any other property except from the property of the defendant, the Metropolitan Realty Company.

"It is further stipulated and agreed that the Metropolitan Realty Company has never paid the plaintiff, the City of Louisville, any sum whatever on account of the judgment or costs incurred in said action No. 77962, Louis Roehrig v. City of Louisville.

"It is further stipulated and agreed that the drain pipe in the public sidewalk in front of the property of the defendant, Metropolitan Realty Company, heretofore referred to, was in a defective condition in that a hole or holes had come into the cover of said drain pipe and had been there for many days, and that the said Louis Roehrig received the injuries complained of in the said case of Louis Roehrig v. City of Louisville, because of the defect in the said drain pipe, by falling over the same, and that he obtained the judgment referred to in the petition of the city of Louisville in this case, and was paid the full amount of said judgment, as shown by the records of the city of Louisville.

"It is further agreed that the amount paid out by the city of Louisville on account of the verdict and judgment obtained by the said Louis Roehrig, in said case of Louis Roehrig v. City of Louisville, referred to in

the petition herein, was six hundred and six and 60/100 ($606.60) dollars.''

There was also other testimony taken showing about the time this building owned by appellee was constructed and endeavoring to show by whom this drain pipe, as well as the walk at that place, was constructed; but as to who did this work, or procured it to be done, is not satisfactorily shown. However, in the view we take of this case it is immaterial as to the purpose for which, or the persons by whom, this work was originally done.

Upon a trial of the case the lower court gave a peremptory instruction to find for the defendant (appellee), which was accordingly done, and the appellant's motion for a new trial having been overruled, it prosecutes this appeal.

The action of the learned judge who tried this case, in giving the peremptory instruction, was based upon the idea that the abutting property owner under the laws of this State is not compelled to keep in repair sidewalks along by the side of his premises and that the defective condition of the drain pipe involved in this case, and which produced the injury sued for, should have been repaired by the city and not by the appellee as abutting property owner. As a general proposition, this rule of law is correct. When the sidewalk is constructed in the manner required by the city no duty devolves upon an abutting property owner to keep the walk in repair. The material out of which the walk is constructed might be inferior, or blocks of stone or brick from which it is constructed may become loose and produce a rough and dangerous condition in the walk, but the property owner, unless he in some way for his own benefit or for the benefit of his property brought about these conditions, is not in the least liable for any accident or injury which may result to any member of the public in the use of such walk unless required to repair them by some statute or ordinance. Moreover, if other persons, not for any use or benefit of the property owner or by his procurement or for the use or benefit of his property, place obstructions upon the walk, either permanent or temporary, no duty devolves upon the property owner to remove such obstruction, and, of course, no liability to any one who may be injured by reason thereof.

In such cases, it is the primary duty of the city to·
keep in repair the sidewalks therein, but a secondary
duty devolves upon it to remove or repair any obstruc-
tion which may be placed or maintained thereon by any
person, after it has reasonable notice, or after such time
as ordinary care would have notified it of obstructions,
but in such cases the producer of the obstruction is
likewise primarily liable to the injured party and would
be liable over to the city for any sum which it might be
compelled to pay on account of the obstructions placed
upon, made, or maintained on the sidewalk. Whensoever
the use of the walk which produces the obstruction con-
stitutes a servitude on the walk for the private benefit
and use of a third party, or his property, such third
party, or property owner, is liable to the party injured
for the original construction in the one instance, or the
failure to repair in the other.

Abundant authority exists for this rule in text writers
upon the subject, as well as courts of last resort, but we
need go no further for authority for the rule than the
opinion of this court. In the case of Stephenson's Admr.
v. Deickman, 158 Ky., 337, a very similar question was
under consideration by this court, and one exceedingly
analogous to that involved in the instant case. The prop-
erty owner had by means of a down pipe from the roof
of his buildings permitted quantities of water thus col-
lected to be emptied from the pipe on the sidewalk and.
it was frozen into a ridge across the walk, which pro-
duced an obstruction to pedestrians, and the decedent,
while in the exercise of ordinary care, stumbled over
this ridge of ice and fell, from which she sustained in-
juries which afterwards resulted in her death. Suit
was brought against Deickman, the property owner,
from whose building the water had thus been cast upon
the sidewalk and which water after being frozen pro-
duced the obstruction. In the petition the facts above
were stated, but the court sustained a demurrer filed to·
it by the property owner, and that judgment on appeal
was reversed by this court. We quote the opinion, as
follows:

"As the question is one of first impression in this
jurisdiction, appellant. relies, by way of analogy upon
Covington Saw Mill & Mfg. Co. v. Drexilius, 120 Ky.,
493, claiming that the principle there announced· sup-
ports the petition in this case. In the Drexilius case the·

Saw Mill Company, without the permission of the city, and entirely for its own convenience, constructed a covered wooden sewer across a public alley; and the court held it was the company's duty to maintain the sewer in such a reasonably safe condition as would not interfere with the public's superior use of the alley for any purpose for which it might have been properly used; and that its failure to keep the sewer in such repair made it a nuisance.

"While not directly in point, the principle there announced that one who uses a public easement for his own purposes must keep it in a reasonably safe condition for the use of the public, is applicable to the case at bar.

"In the same way appellee relies upon Webster v. C. & O. Ry. Co., 32 Ky. L. R., 404; Jaeger v. City of Newport, 155 Ky., 110; and Varney v. City of Covington, 155 Ky., 662, in support of the proposition that the property owner is not liable. While these suits were against the municipality, it is insisted the principle which excepted the city from liability in those cases, applies equally to the case of an abutting property owner.

"In the Jaeger case the accident happened at the intersection of an alley with a street. There had been snow, and as the snow melted the water ran down the alley and was frozen at the point where the sidewalk crossed the alley. The ice had accumulated until it was about even with the sidewalk—perhaps six inches high, with a large ridge on it. When Mrs. Jaeger stepped on the ice she fell and was injured, although she fell before she reached the ridge of ice. In that case this court held the city was not liable, and it is argued that if the city was not liable under such circumstances, surely the property holder would not be liable, or bound to a greater degree of care, than the city itself. In the course of the opinion, however, the court said:

" 'While, due to the operation of the statutes there in force, municipalities in the New England States are held to a stricter degree of liability, the decided weight of authority elsewhere, as well as the tendency of the more recent decisions, is to hold that a city is not ordinarily liable for mere slipperiness of its sidewalks, occasioned by snow and ice. Where, however, the sidewalk itself is defective, or the snow or ice amounts to an obstruction, or its natural condition has been changed by artificial means, liability may attach; or where it is cus-

tomary to treat the removal of snow and ice as a regular part of highway management, a failure to do so may become wrong or negligent.'

"(Cases cited.)"

This court in the same opinion also quoted with approval from the case of Ready v. St. Louis Brewing Association, 161 Mo., 523 L. R. A., 805, as follows:

"It is argued upon the authority of Norton v. St. Louis, 97 Mo., 537, 11 S. W., 242; St. Louis v. Connecticut Mut. L. Ins. Co., 107 Mo., 92, 17 S. W., 637; Baustian v. Young, 152 Mo., 317, 53 S. W., 921, and other cases cited that the abutting owner is not responsible for the condition of the sidewalk in his front, but that the duty to look after that is on the city alone. It does not, however, impair the doctrine laid down in those cases to say that an individual may become liable and jointly liable with the city for an unsafe condition of the sidewalk. This liability does not arise from the fact that he is owner of property abutting the sidewalk, but from the fact that he is instrumental in causing the condition, either by his wilful act or negligent omission to perform a duty which the law imposes on him. If he is allowed an extraordinary use of the sidewalk for his private convenience, as, for example, to place in it a manhole for the reception of coal (Benjamin v. Metropolitan Street R. Co., 133 Mo., 274, 34 S. W., 590), a water meter (Carvin v. St. Louis, 151 Mo., 334, 52 S. W., 210), or an excavation in close proximity to the sidewalk for a foundation for a new building (Wiggin v. St. Louis, 135 Mo., 558, 37 S. W., 528), the law imposes on him the exercise of reasonable care to guard the public from injury in such use. And it may be said that if the individual neglect to perform any duty that the law imposes on him in particular, and a dangerous condition of the sidewalk results, then a new duty on him in relation to that condition arises, and, of course, with greater force, it would be so if that condition was the result of his wilful act."

Again in the same opinion we find the following language:

"It is said by this defendant that there is no law requiring it to have gutters and down spouts on its buildings at all. There is no statute on the subject that we are aware of, but the principle of the common law is that, while the owner of adjoining property is not responsible for the natural flow of water across his land

onto the land of his neighbor, yet he is liable if he collects it in a quantity by artificial means, and discharges it in a flood on his neighbor's land, and that principle underlies that feature of this case. Water accumulated on a large roof, and directed to a single point, may cause a nuisance for which the owner of the house would be liable. If, therefore, the petition is to be construed into stating a case in which the brewing association was negligent in suffering water to be discharged on the sidewalk where it became frozen, and formed a dangerous condition (and that seems to have been the construction put upon it by both parties and the trial court), then it showed a condition of the sidewalk for the continuance of which for an unnecessary period both defendants would be liable, the joint wrong being the neglect to remove the obstruction.''

Further on in the opinion the court quoted from the case of Tremblay v. Harmony Mills, 171 N. Y., 599, this language:

''That the jury could have found that the discharge of water and drippings from the leader in winter weather, when the water so discharged was liable to freeze and form ice, rendered the sidewalk dangerous and constituted an obstruction, and that the defendant was negligent in not carrying his leader under the sidewalk of the carriage way seems to me quite plain. To exonerate the defendant from liability it must establish one of two propositions: First, that it had the lawful right to discharge the water which it had collected on the roof of its buildings upon the highway regardless of the effect of that action upon the highway; or, second, that because the municipality was liable to any one injured by the defective character of its highway, no action could be maintained against the abutting owner, though his act may have created the danger or defect. I think that neither proposition can be sustained.'' See also Brown v. White, 202 Pa., 297; Cavanaugh v. Black, 192 Mass., 63; Hynes v. Brewer, 194 Mass., 435; Leohan v. Cochran, 178 Mass., ——; Maloney v. Hayes, 206 Mass., 1; Field v. Gowdy, 199 Mass., 568, and other cases found in that opinion.

In summing up its conclusion that the petition stated a cause of action against the appellee Deickman, this court in the opinion, *supra,* says:

"From these authorities it follows that the property holder, in conducting the water from the roof of his house to the sidewalk, must use ordinary care not to cause an obstruction or nuisance, by which persons lawfully using the sidewalk, and in the exercise of ordinary care upon their part, may be injured; and, in case such an obstruction or nuisance should arise suddenly or unexpectedly, it is the landlord's duty to remove the obstruction or nuisance as soon as he has knowledge of its existence, or could have had such knowledge by the exercise of ordinary care."

Similar cases to the one being discussed in the Deickman case and somewhat analogous to the question involved herein were considered by this court in the following cases: Covington Saw Mill & Mfg. Co. v. Drexilius, 120 Ky., 493; Varney v. City of Covington, 155 Ky., 662; City of Harrodsburg v. Vanarsdall, 148 Ky., 507, and others which might be cited.

Most of the cases just referred to and considered deal with the question as to the rights of the property owner for the accumulation of ice upon the walk by the freezing of water thereon in collected quantities, thus producing an obstruction to the sidewalk, and, of course, they determined that it was unlawful for the property owner to throw water in such collected quantities upon the walk in such a manner as to produce a nuisance and an impairment of its use by the public, and they make such property owner primarily liable for any injury to any member of the public growing out of the nuisance thus produced. If the property owner has no right to turn this collected quantity of water through a down spout from his property upon the sidewalk, why, may we not ask, would not the law impose upon him the duty to protect the sidewalk from the flow of such water upon the surface of the walk by conducting it into the guttering or sewer pipe provided by the city for its final escape?

In the opinion in the case of Tremblay v. Harmony Mills, *supra,* from which this court quoted with approval in the Deickman case, it is said: "And that the defect was neglect in not carrying his leader (drain pipe) under the sidewalk to the carriage way seems to me quite plain." We are unable to find any authority holding that a drainage pipe, used exclusively for conveying water under the sidewalk, from a down pipe maintained

by the property owner, across such sidewalk into the drainage furnished by the city is not a continuance of the down pipe, and in the very nature of things, it is necessarily appurtenant to the abutting property, being used exclusively for its use and benefit.

The city is not particularly interested in conveying away the water collected from this private property into drainage pipes across the walk, for it serves no particular municipal purpose, but, on the contrary, the drainage pipes across the walk are maintained exclusively for the use of the abutting property owner.

According to our view, there is no substantial difference between this character of use of the walk and that in case of holes, openings, etc., for the use of cellars, or other benefits to the abutting property, and the rule that those who maintain such obstructions must keep them in repair, is so universal as to require the citation of no authority.

The drain pipe of the character being considered is maintained to protect the abutting property owner from liabilities resulting from conditions which might arise from a falure to take care of the water, as is found in the Deickman case, *supra*, and others similar to it. If to avoid the liability imposed by the doctrine announced in that case, and similar cases, he provides a means to convey the water across the walk, or appropriates one already provided, he must exercise ordinary care to keep it in reasonable repair so as not to interfere with travel on the walk by those entitled to use it. (East End Employment Co. v. Sipp, 14 K. L. R., 924; Blocker v. City of Owensboro, 129 Ky., 75.)

The principle established in the case of Webster v. C. & O. Ry. Co., 32 Ky. L. R., 407, and other like cases has no bearing upon the question under consideration, as is shown in the Deickman case, *supra*. In the Webster case, the doctrine first discussed in this opinion was recognized, namely; that an abutting property owner is not liable for any injuries resulting from non-repair of the sidewalk in front of his premises, which non-repair he in nowise produced, nor was it created or maintained as a servitude upon the walk for the exclusive use or benefit of his property. It merely decides the general principle of law that the owner of abutting property does not have to keep the ordinary defects in the sidewalks repaired, and there is nothing in that case conflict-

ing with the views herein expressed. So holding this
court in the Webster case, said: "There is no good rea-
son why a railroad company should be held to a higher
degree of care or responsibility for defects· in sidewalks
or streets adjacent to its premises than other property
owners. And there is no statute making a distinction
between carriers and other persons in this respect."

The negligence complained of in that case did not con-
sist of any acts of omission, or commission, relative to
a thing provided for the exclusive use of the railroad
company. The complaint was that the guttering next to
the curbing of the sidewalk where it crosses an alley or
street going to the depot, was improperly maintained,
and this court determined that under such circumstances
it was not the duty of the abutting property owner to
keep in repair the driveway to its depot at the place
where it crossed the sidewalk. The public is as much
interested in the constructing and maintaining of an
open way to the depot within the city as it is to have
access by streets or alleys to any other public place
within its limits. Because the abutting owner may, per-
chance, reap a·benefit from the burden of the servitude
on the street or sidewalk, furnishes no legal.reason why
such owner should have cast on him the duty to repair
the street or walk at such places. Not so, however, with
regard to the drain pipe across the walk for individual
or private purposes, as is involved in this case.

We have read with interest the able brief of the ap-
pellee, but the authorities therein cited do not, according
to our view, bring this case within the general rule ex-
cusing abutting owners from the duty of repairing public
ways adjacent to their premises.

That the city has a right in such cases as this to
recover from the property owner who is primarily liable
any sum which it may be compelled to pay, there can be
no question. (City of Louisville v. Daviss, 157 Ky., 189,
and many other cases.)

The learned judge who tried the case justified his
action in giving the peremptory instruction to find for
the appellee on the ground that there was no proof that
the property owner *created* or *constructed* this drainage
pipe across the walk. We do not think this a deciding
factor in this case. The pipe was evidently originally
constructed for the use of this property, and the agreed
stipulation of facts shows that it not only was being used

by the appellee at the time of the accident complained of, but had been so used by it for many years previous. We are convinced that it was the duty of the appellee to have maintained in reasonable repair this drainage pipe, under the facts and circumstances developed by this record.

It results, therefore, that the court erred in giving the peremptory instruction to find for the appellee, and upon a return of the case, unless a different state of facts should be developed, the court should give a peremptory instruction to find for the appellant in the sum of $660.60, with interest from the date of the filing of the suit.

Judgment reversed with directions to proceed in accordance with this opinion.