## City of Newport, et al. v. Schmit.

(Decided May 20, 1921.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Maintenance of Streets and Sidewalks.— It is the duty of a municipality to construct and maintain the sidewalks upon its streets in a reasonably safe condition for travel by pedestrians to the full width of the sidewalk.

2. Municipal Corporations—Abutting Owners—Defects in Sidewalks. —An occupant of abutting property is not liable for defects in the sidewalk, which he did not create, nor for failure to repair a sidewalk, if he did not cause the necessity therefor.

3. Municipal Corporations—Abutting Owners.—If an abutting property owner creates a servitude upon a sidewalk, which is in addition to the general use the public may make of the sidewalk, and which is for the exclusive benefit of himself, or of his property, he is under a duty to so maintain it, that it will not become a nuisance.

4. Municipal Corporations—Servitude Upon Sidewalk—Nuisance.—A subsequent owner or lessee of property to which there is attached, for its benefit or the benefit of the occupant of same, a servitude upon the sidewalk, abutting thereon, which is in addition to the use the public may make of the sidewalk is under obligation to maintain the servitude, in a way so that it will not become a nuisance, and if he fails to do so, he will be liable for the damages arising therefrom, if he appropriates the servitude to his use and benefit or the benefit of his property.

5.  Nuisance—Private Nuisance—Failure to Abate.—A subsequent
    owner or lessee of property, having a private nuisance thereon
    created by the former owner will not be liable for the consequen-
    ces of it, until requested to abate it, but, if the nuisance is a public
    one, he will be liable, if he has knowledge of its hurtful character,
    without request to abate it.

WM. A. BURKAMP and BRENT SPENCE for appellants.

P. J. RYAN and GEORGE HEROLD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Affirming.

This action by the appellee, Margaret E. Schmit,
against the appellants, City of Newport and the Frankel
Amusement Company, had for its purpose the recovery
of damages which she avers that she sustained on account
of personal injuries received when she slipped and fell
upon the sidewalk in front of the theater owned, con-
ducted and controlled by the Frankel Amusement Com-
pany, and which bore the name of the "Hippodrome."
The sidewalk, at the point where the appellee's feet slip-
ped from under her and she fell upon it, is about 12½
feet in width, and all of it is constructed of cement, ex-
cept a strip 27 feet in length and 3 feet in width, which
immediately adjoins the property line in front of the en-
trance to the theater, and extends into the sidewalk to
the distance of 3 feet, and this strip is made of tiles. The
entrance into the theater from the sidewalk is through
a lobby, which is also paved with tiles, and the portion of
the sidewalk made of tiles is a continuation of the floor
of the lobby.   The basis of the claim for recovery, as al-
leged in the petition as amended, is that the sidewalk
upon which the appellee fell and was injured was a side-
walk in the city, under its management and control
through its officers, whose duty it was to maintain it in
a reasonably safe condition for travel by pedestrians,
and, though under such duty, the city permitted the Hip-
podrome Amusement Company, which in April, 1915,
erected the building in which the theater is conducted, to
remove the cement sidewalk in front of the building and
adjoining its property line, to a width of 3 feet and a
length of 27 feet, and to substitute for the removed
cement a surface made of smooth, glazed and slippery
tiles, with a grade from the property line to the cement
of ½ inch to the foot, and that the portion of the sidewalk

thus constructed of tiles was rendered dangerous and unsafe for travel by pedestrians, ordinarily shod, by reason of the glazed, slippery and slick condition of the surface of the tiles, and the slanting surface given to it by the grade upon which it was constructed from the house line to where it joined the cement portion of the sidewalk, and it was this dangerous and unsafe condition which caused the appellee to slip and fall and injure herself. The tiled portion of the sidewalk, which was formed by permitting the Hippodrome Amusement Company to extend the floor of its lobby into the sidewalk to a distance of 3 feet, with the grade as above stated, was the portion upon which the appellee was walking at the time her feet slipped from under her and she fell. The tiles composing the strip were white in color, except in the center of the strip, and immediately in front of the lobby, the word "Hippodrome" was constructed of tiles of a different color. The tiled portion of the sidewalk and the name of the theater inserted in it were for the special benefit of the owner of the theater building and the business conducted in it in the way of an advertisement of the building and its business. On the 20th day of June, 1916, the appellant, Frankel Amusement Company, became or assumed to be the owner of the building, controlled and conducted its business in it until March 16, 1917, when appellee received the injuries complained of. There was some evidence to the effect that the tiled portion of the sidewalk was in the same condition when appellee fell upon it as when it was first constructed, except that from use, it had become more slick and therefore more unsafe and dangerous. It was averred that the city and its officers at all times knew of the dangerous and unsafe condition of the sidewalk, caused by the tiled portion of it, or by the exercise of ordinary care would have known of it, and negligently failed to remedy, or cause to be remedied, the defects in it so as to render it reasonably safe for travel, and the Frankel Amusement Company knew of its injurious character at all times previous to the incurrence of the injuries, but maintained and used the tiled portion of it for its own special benefit and negligently failed to remove the tiles from the sidewalk, or to otherwise take precautions to render that portion of the sidewalk reasonably safe for pedestrians, and negligence of the city and the amusement company, as before stated, was the proximate cause of the injuries which the appellee received. The foregoing contentions of appellee were

denied by the answers of the appellants, and the trial resulted in a verdict by the jury in favor of appellee against the city for the sum of $1,000.00 in damages and against the Frankel Amusement Company for the sum of $4,000.00, and each has appealed.

(a) At the conclusion of the evidence for the plaintiff, and at the conclusion of all the evidence, each of the defendants moved the court for a directed verdict in its favor, and these motions being overruled, each of them now insists, as a common ground for the reversal of the judgment, that the court erred in thus disposing of their motions. It is not contended nor insisted for either of the defendants that the time which had expired from the construction of the tiled portion of the sidewalk to the time of the injury or from the time the theater came under the control of the Frankel Amusement Company to the time of the injury, was insufficient to charge the defendants with notice of its unsafe and dangerous condition, and to have enabled them, with the exercise of ordinary diligence, to have remedied the alleged unsafe condition, but it is insisted for each that the evidence was insufficient upon the issue as to the unsafe condition for travel of the sidewalk to require a submission to the jury. It may be confessed, that, if there were no contradictions in the evidence upon that subject, and all of the evidence conduced to prove the conclusions drawn from it, by counsel for defendants, they were eminently right in their contention, but when the evidence as to the character of the tiled portion of the sidewalk, with regard to its condition of safety for travel, is examined, it is apparent that the evidence upon that subject is very contradictory and made necessary a submission to the jury of that issue, and the fact that we would arrive from the evidence at a conclusion different from that at which the jury arrived, is aside from the subject, nor will a conclusion upon our part, if we had been the triers upon the facts, that the verdict should have been upon the issue for the defendants, warrant a conclusion that the issue ought not to have been submitted. While it is not expressly proven that the city authorized the owner of the theater to extend the tile floor of the lobby out into the sidewalk to the distance above stated, such may be inferred from the fact that the work was done under the supervision of an inspector of the city, but whether the city was or was not consulted in the matter is immaterial, since the duty of a municipality to keep and maintain its sidewalks in a reasonably safe

condition for public travel, applies to the entire width of a sidewalk, and a failure upon the part of the municipality to exercise ordinary care to keep and maintain its sidewalks in a reasonably safe condition for travel by pedestrians, after notice of its unsafe condition, or when by the exercise of ordinary care to attend to its duties in that respect, it would have had knowledge of the defective condition of the sidewalk, it will be liable for injuries sustained by persons on account of such unsafe condition, if sufficient time has elapsed after notice, or after it is chargeable with notice, within which to have reasonably enabled it to have remedied the conditions. Eagan v. Covington, 166 Ky. 825; City of Louisville v. Haugh, 157 Ky. 643; Covington v. Belcher, 123 S. W. 246; Gnau v. Ackerman, 166 Ky. 258; Dayton v. Lory, 169 Ky. 94; Western Ky. Telephone Co. v. Pharis, 25 K. L. R. 1838. It is true that municipalities are not guarantors of the safety of persons upon their sidewalks and streets, nor does one have a cause of action merely because he may slip and fall upon a sidewalk, when such result is not caused by an inherently dangerous or unsafe condition of the sidewalk, nor are defects in a sidewalk sufficient to support a cause of action, if in spite of the defects, in the opinion of reasonable men, the sidewalk is reasonably safe for public travel, nor does the fact that a fall of rain or snow, upon an otherwise safe sidewalk, make it slippery, give a cause of action to one slipping down upon it. Many cases supporting these doctrines are cited by the appellants and of the results in those cases we have no controversy, but the instant case does not seem to come within the principles applicable to the facts of either of the cases cited. There were witnesses who deposed that the tiled surface of the strip of the lobby floor, which extended out into the sidewalk, was as ''slick as glass,'' that it was ''intensely slick,'' and that it was ''slippery, very slippery.'' There was evidence tending to prove that the tiles had a hard, very smooth and glazed surface which rendered them inherently slick and made one, ordinarily shod, unable to retain the footing upon it necessary to enable him to escape falling. It was proven that four or five other persons had slipped down upon it, previous to the mishap of the plaintiff. A witness deposed that its slickness was similar to a piece of tile brought up in the record, and this piece is very hard, glazed and slick. This inherent condition of the tiles taken in connection with the fact that the surface was slanting to the extent that

it was 1½ inches lower where it joined the cement, than at the house line, which was a distance of only 3 feet, it cannot be said that as a matter of law it was reasonably safe for public travel. There was other evidence which tended to prove that the tiles of which the strip upon the sidewalk was constructed were not too slick to enable a pedestrian, shod in the ordinary way, to pass safely over it, and there was other evidence which tended to prove that the tiles did not have the glazed, slick condition contended for by the plaintiff. There was, also, evidence which tended to prove that the use of the sidewalk had rendered the tiled portion of it very much slicker than it originally was, and that this condition had existed for a long period before the mishap to the plaintiff. Under this state of evidence, the issue as to the reasonable safety of the sidewalk, at that point, for travel by pedestrians, was an issue for the jury, and which the court could not take away from it, as the defendants insisted that it should, without entirely ignoring a very considerable portion, and probably a preponderating portion of the evidence. City of Lebanon v. Graves, 178 Ky. 749; City of Dayton v. Lory, *supra*. The liability of the Frankel Amusement Company as an abutting property owner for the unsafe condition of the sidewalk, in front of its property, will be hereafter considered.

(b) In addition to the foregoing ground it is insisted for the Frankel Amusement Company that a verdict should have been directed in its favor, because of a failure of the evidence touching its connection with the property. The petition alleged that the Hippodrome company when the owner of the building extended the floor of the lobby into the sidewalk, as heretofore stated, and the Frankel Amusement Company thereafter assumed the ownership, occupancy and control of the building, and appropriated the use of the tiled portion of the sidewalk for its special use and benefit, and that of its business, and maintained the tiled portion of the sidewalk in its dangerous and-unsafe condition for travel. If that portion of the sidewalk was in the condition contended for by appellee, it was a public nuisance, and both the creator and the maintainer of such nuisance are liable for the damages resulting to persons therefrom, if it was a nuisance when created; but if not a nuisance when created, if it thereafter became such by failure and neglect to maintain it in a reasonably safe condition for public

travel, a subsequent owner or lessee who appropriates it for his own use is liable for the injuries caused by it. Hence, although in the former opinion of this court, in this case, in 184 Ky. 342, it inadvertently treated the Frankel Amusement Company as both creator and maintainer of the alleged nuisance, the inadvertent statement is immaterial since the evidence shows, without contradiction, that the latter company was either owner or lessee of the building, and in control of it at the time of the mishap to appellee, and there is no pretense that it was unable, for any reason to abate the nuisance, nor any claim made that it was absolved from liability by reason of no notice or request to it to abate the nuisance before the incurrence of the injury. In fact it offered upon the trial an instruction in substance advising the jury that it was the duty of the Frankel Amusement Company to maintain the tiled strip in a reasonably safe condition for public travel. Under the facts of this case, the Frankel Amusement Company would not be liable for an injury on account of the alleged nuisance, unless it continued and maintained it for its own special use and benefit, or that of its building and business, and negligently failed to maintain it in a reasonably safe condition for travel by pedestrians. Of course, it will be conceded that an occupant of abutting property, whether the owner or lessee, is not liable for defects in the sidewalk which he did not create, nor for a failure to repair a sidewalk if he did not cause the necessity therefor. Webster v. C. & O. Ry. Co., 32 K. L. R. 404. If, however, one creates a nuisance upon a sidewalk, he will be liable for the consequences in the way of injuries to individuals caused by the nuisance. Hence, if an abutting property owner creates a nuisance upon the sidewalk, in front of his premises, he will be liable for the injuries caused by it, and further if he creates a servitude upon the sidewalk, which is in addition to the general use the public may make of the sidewalk, and which is for the exclusive benefit of himself, or of his property, he is under a duty to so maintain it that it will not become a nuisance, and if he fails to do so, he will be liable in damages to one of the public who suffers injuries because of his failure to maintain it in a way which will make it in a reasonably safe condition for the travel of the public who use the sidewalk. Louisville v. Metropolitan Realty Co., 168 Ky. 204; Hippodrome Amusement Co. v. Carius, 175 Ky. 783; Stevens, Admr. v. Dickman, 158 Ky. 337; Covington, etc.,

v. Drexilius, 120 Ky. 493; Varney v. Covington, 155 Ky. 662; Harrodsburg v. Vanarsdale,148 Ky. 507.   A familiar example of such servitudes and the consequent liability of the abutting owner who creates them is where a cellar door, or coalhole, or section of the sidewalk is composed of glass, or other transparency for the benefit of the property of the abutting owner, or a covered gutter across the sidewalk to carry away the water from the house of an abutting owner.   But the liability of a subsequent owner of property, or a tenant or lessee of property for a nuisance upon or attached to the property which was created by the original owner, or in case of a tenant or lessee by the owner previous to its occupancy by the lessee, is a subject of wide divergence of opinion in the different jurisdictions.   In some jurisdictions it is held that no liability attaches to a tenant, lessee or subsequent owner for a nuisance existing when he takes possession or control of the property, except such as arises from his negligence in the use of the subject of the nuisance.   In others it is held that a subsequent owner, lessee or tenant is liable for continuing a nuisance which existed when his occupancy began, if he has knowledge of its injurious tendencies, and such knowledge is sufficient to fix a liability upon him without further notice or request to abate it.   Southern R. Co. v. Plott, 131 Ala. 312; Willette v. Chicago, etc., 88 Ia. 281; Union Trust Co. v. Cuppy, 28 Kas. 754; Pinney v. Berry, 61 Mo. 359; Dicken v. Chicago, etc., 71 Mo. 575; Nickett v. St. Louis, etc., 135 Mo. App. 661; Ahern v. Steele, 115 N. Y. 203.   In other jurisdictions it is held that a subsequent owner or lessee is not liable for a nuisance which the former owner or landlord created until he has been requested to abate it and such has been the general rule adhered to by this court, but the facts in neither of the adjudicated cases bear any similarity to the facts of this case.   West Bros. v. L. C. & L. R. R. Co., 8 Bush 405; Gleason v. Schneider, 7 K. L. R. 834; Ray v. Sellars, 1 Duv. 255; Glenn v. Crescent Coal Co., 145 Ky. 137; Ireland v. Bowman, 114 S. W. 338; Central Consumers Co. v. Pinkert, 122 Ky. 729. It will be observed that the nuisance complained of in each of the foregoing cases was either a purely private one, or one where the circumstances were such as good faith required a request for an abatement and an opportunity on the part of the complainant to do so.   In the latter cited case it was said "The doctrine is, also, recognized that a continuer of the nuisance is liable without a re-

quest to remove it if by some positive act he adopts it, or the nuisance results from the use rather than from the erection itself.'' In line with that decision are the cases which hold that no notice is necessary to a subsequent owner or lessee of the existence of a nuisance created by the former owner or landlord where the subsequent owner or lessee appropriates the nuisance to his own use and continues and maintains it for his own purpose, or where the continued use of it is in itself a nuisance. White-neck v. Philadelphia, etc., 57 Fed. 901; Water v. Wiconick Co., 35 Md. 385. This is aside from the doctrine of those cases which hold that a tenant or occupant of premises, who has the control of them, is so far as third persons are concerned to be regarded as the owner, and is therefore *prima facie* liable for all nuisances upon the premises injurious to the adjacent owners, and for all injuries which arise from defect of repairs in the premises or their approaches. Chicago v. O'Brennat, 65 Ill. 160; Oakham v. Holbrook, 11 Cush 302; Fischer v. Thirkill, 21 Mich. 1; Tate v. Mo., etc., R. Co. 64 Mo. 149; Clancy v. Byrne, 56 N. Y. 129. The rule which applies to the liability of a subsequent owner or a lessee of premises on account of a private nuisance does not seem to be applicable in a case presenting facts similar to the instant one, where the nuisance is a public one, and is in a public street and sidewalk of a city, and where only the municipality could enforce an abatement, and where a private individual would have no cause of action on account of the nuisance, except by reason of some special injury received by him. In Leahan v. Cochran, 178 Mass. 566, it is expressly held that a subsequent owner of property does not have to have notice nor request to abate a nuisance which is attached to the property, to create a liability for the consequences of it if the nuisance is a public one, and this doctrine is sustained, at least in principle, by Davie v. Levi, 4 Am. St. Rep. 225; Vaughan v. Buffalo, etc., Ry. Co., 72 Hun. 471. This seems to be the just rule where the subsequent owner or lessee has knowledge of the hurtful character of the nuisance. There could be no question that the tiled extension of the lobby floor in the sidewalk, in front of the entrance to the theater with the name of the theater constructed therein, in the instant case was a servitude imposed upon the sidewalk for the special and exclusive benefit of the theater and of the owner or lessee thereof, and the occupant of the building who was in control of it, and who received the benefits of the additional servitude

upon the sidewalk, was necessarily under obligation to use ordinary care at least to maintain the servitude in manner so as not to render the sidewalk dangerous and unsafe for travel, and the location of the object imposing the servitude is such as to dispel any contention as to who was maintaining it, and for whose benefit it existed. There could be no doubt of the appropriation of it by the occupant of the building in the conduct of its business as a theater, as there was no conflict in the evidence upon that subject and if it should be insisted that it composing a portion of the sidewalk, the occupant of the building could not abate the nuisance without the consent of the city, yet there were other practical means of rendering it harmless and reasonably safe for travel, and which could have been made use of by the occupant of the property without the consent of any one. No complaint is made of the instruction, which fixed the liability of the Frankel Amusement Company, and as before said an instruction offered by it was substantially the same as that given, as to its liability on account of the alleged nuisance.

(c) The appellee, as the consequences of the injury, was unable to do any work for more than a year. The evidence for her proves that her right arm is permanently disabled, her right kneecap was fractured by the fall, and a considerable unnatural growth has come upon it, which renders the injury to it, a permanent one. She suffered and has continued to suffer a great deal of pain. At the time of the injury her avocation rewarded her with $12.00 to $14.00 per week, and after a year of total inability to work, she is now unable to earn more than $10.00 to $12.00 per month, and at a much higher rate of wages than existed at the time of the injuries. She has to have assistance in dressing her hair and bathing her person, on account of the injury to her right arm, which she cannot elevate from her side. The injury to her knee renders her unable to stand for any considerable length of time, or to rest upon her knee. Hence, we cannot say, that the damages allowed were excessive.

The judgment is therefore affirmed with damages.