## DERICHS v. O. K. AUTO PARTS & SALES CO., Inc.

### No. 3329.

Court of Civil Appeals of Texas. El Paso.
Feb. 27, 1936.

Rehearing Denied March 26, 1936.

**466**

J. M. Woods, of San Antonio, for appellant.

R. H. Mercer, of San Antonio, for appellee.

PELPHREY, Chief Justice.

On or about the 22d day of February, 1933, appellant went into the store of appellee located at 307 Water street in the city of San Antonio, Tex., and, after making a purchase, left the store on her way to join a friend across Water street. The floor of the building in which appellee's store is located is higher than the sidewalk, and, at the time here involved, there existed a corrugated concrete ramp 1⁹⁄₁₀ feet wide and 12½ feet long across the front of the building which stood about 4 inches back of the property line, which makes the ramp extend out about nine-tenths of a foot into the street or sidewalk. On the day in question appellant fell as she was leaving the store and was injured.

She filed this suit seeking to recover for such injuries, alleging that appellee had negligently and carelessly permitted a hole and irregular depression to occur and remain in the ramp; that such hole and depression, being below the doorway leading from appellee's place of business, and not being apparent to persons using ordinary care, created a dangerous and unsafe condition.

The jury found in response to special issues that the ramp contained a hole or irregular depression; that appellant fell and was injured from stepping in such hole or depression; that appellee had knowledge of the presence of such hole or depression prior to the accident for such a length of time as to have afforded it a reasonable opportunity to repair it; that appellee was negligent in permitting the hole or depression to remain in the ramp; that such negligence was the proximate cause of appellant's injuries; that appellant was not guilty of contributory negligence; that appellant's injuries were not the result of an unavoidable accident; and that appellant had been damaged in the sum of $500.

After the verdict, appellee filed its motion for judgment non obstante veredicto, which motion was granted and judgment rendered that appellant take nothing, and this appeal followed.

Opinion.

Frequently we have no way of knowing upon what theory the trial court makes its decisions, but here we find in the judgment itself the trial court's reasons for disregarding the findings of the jury:

"The court is of the opinion that said motion should in all things be granted and that the Motion for An Instructed Verdict should have been granted in the first instance because the court finds that the law and facts in this case are with the defendant and plaintiff should recover nothing from the defendant."

"It appearing from the undisputed evidence that the hole complained of was upon City property and there was no evidence that defendant created the hole complained of or did any act causing same. There was, therefore, no legal duty upon defendant to fix said hole or repair same; and there being no duty resting upon defendant to repair said hole, the failure to maintain same in repair, could not be made the basis of negligence."

If these conclusions of the trial court are borne out by the law and the evidence, then the judgment should be affirmed.

If, as contended by appellee, the hole or depression which appellant alleges caused her fall was not in the ramp or incline but in the sidewalk, then there would be no liability on the part of appellee.

But, if appellee was allowed an extraordinary use of the sidewalk for its private convenience, then the law imposes upon it the exercise of reasonable care to guard the public from injury in such use, and it will be liable for injuries sustained on account of the unsafe condition of that portion of the walk used by it, if sufficient time has elapsed after it is chargeable with notice within which to have reasonably enabled it to have remedied the conditions. City of Louisville v. Metropolitan Realty Co., 168 Ky. 204, 182 S.W. 172; City of Newport v. Schmit, 191 Ky. 585, 231 S.W. 54; Hippodrome Amusement Co. v. Carius, 175 Ky. 783, 195 S.W. 113, L.R.A.1918E, 377; Granucci v. Claasen, 204 Cal. 509, 269 P. 437, 59 A.L.R. 435; Melvin v. Kane (Tex.Com.App.) 277 S.W. 374; Magnolia Petroleum Co. v. Long (Tex.Com.App.) 86 S.W.(2d) 450.

We therefore must next determine, if possible, the location of the hole or depression.

Appellant took two pictures of the scene of the accident and introduced them in evidence. We include them here:

Her testimony as to the location of the hole and as to how the accident happened was: "As to what happened to me as I was leaving the doorway, I went out the door like I always do, and I just know my foot caught something there and I just fell. That's all I know. As to how I fell, I came right out of the door and there was a little decline there in the front of the business, and I came out and I wasn't looking for holes and, naturally, I walked like everybody walks and my foot caught something and I fell down right near to the street. I turned around and a soldier was there on business and he came and picked me up and I turned around and saw the hole there. * * * Afterwards I went back to that place where I got hurt, and I took some pictures of that step. I have got the pictures right here. These pictures I hand you show the incline from the store and the hole right there, right at the entrance of the street. My foot caught in that hole in the incline; right in that hole. Here's the store and there is a little decline here (Indicating on picture). Stepping out of the store you have to go like this. My automobile was standing over there and I came out of the store and stepped down and fell right down. That hole is shown on the pictures, right here. (Indicating) This hole here."

On cross-examination she further testified:

"This hole or place I am talking about is on the in-step. You can see that on the picture there. Here's the building, (indicating on picture) and this is the store; the floor of the store. That's the slope; this part. This is the slope here, and the sidewalk is right here. This is the incline that goes up. It is a very bad place; this hole there. This is the sidewalk right here (indicating). That's the door there; the store entrance. * * * Right here is that hole on this picture here. (Indicating) It is right here where I have put the cross (X). This (indicating) is the bottom of the slope and the hole is right at the bottom of the slope.

"Q. I mean the hole is on the sidewalk? It is in the sidewalk and the sidewalk is at the bottom of that ramp? A. The bottom of that ramp."

"Q. And that's the hole you saw there that day? A. That's the hole I stepped in. * * *

"This mark that I have put on this picture represents the place where the hole was, and that is right at the base of the ramp.

"Q. In other words, it was on the part of the sidewalk there that's parallel with the ground; that's flat with the ground; it was in the sidewalk there? A. Yes, sir; right on the sidewalk; on the ramp."

On redirect examination she further testified:

"That picture was taken about two months after my accident. That picture shows how that incline was at the time I fell there. This gentleman, the manager of the defendant company spoke to me about where the hole was. He said it was right there on the incline when you come right out of the door. There is an incline and right on the incline there is that hole. The incline is broken; that in-step on it is broken. That incline is separate from the sidewalk. I said the incline was like this (indicating); built so you could step from the sidewalk into the store. The hole was in the incline; right down here in the incline. It is a piece out of the incline. Here was the sidewalk and this is the incline. (Indicating). Right on the incline is that hole out. That's the hole I stepped in. That hole is out of the incline, and this gentleman told me he knew it was there. * * * That hole was below the level of the floor and in the incline, or ramp, that leads from the sidewalk into the store. * * * I have already testified that this picture shows the true condition at the time the picture was taken, and at the time I fell in that hole."

On recross-examination she further testified:

"That is the ramp, (indicating on picture) and that hole was right down in here. Right there (indicating) is the hole. It shows a hole in there. The hole is right in that decline; down at the bottom of that decline; in the sidewalk. This (indicating) is the decline. I mean the decline also has a big crack in it. I think that's the hole right there (indicating).

"Q. This would be the sidewalk right there. If that's the hole, this is the sidewalk. Isn't that right? It would have to be wouldn't it? In other words, if this is the hole you are talking about it is there in the sidewalk? A. No, sir; it is in the decline.

"Q. In other words, you mean this is the sidewalk and yet that hole isn't in the sidewalk, but it is in the decline? A. On the decline; right where you step down.

"Q. Right at the bottom of the —. A. Right on the bottom of the decline. * * *

"Q. The hole was right in the edge of the ramp, about that deep? A. A piece out of the incline. * * * When I went back and took the pictures I took a good look at it, and I observed it very closely at the time, and after I looked at that and after I took the pictures, I still say that hole was above the edge of that ramp. I can tell you it is in the decline. The thing that goes up to the store. * * * I say that hole was right out of the in-step; off the decline. I haven't seen anything wrong with the sidewalk. The hole was in that incline. * * *

"The manager of the defendant told me where that hole was. He told me it was right in front of the store. I told him that the hole is right on his door, in the incline. He told me whether or not he knew that hole was in that incline. He said the hole was there about ten years and nobody had been falling yet."

Kate Haller, sister of appellant, testified that she heard Mr. Hausman tell her sister that the hole had been in the slab for ten years and nobody had fallen yet; that she visited the scene of the accident before the pictures were taken; and there was a hole right at the end of the slab before the sidewalk started.

▮▮▮ It will readily be seen that this evidence raised an issue as to the location of the hole or depression, and therefore the jury's finding that it was in the incline was binding upon the court. Defendant's witness Zizik shows the ramp or incline to be a sloping strip of concrete 1$\frac{3}{10}$ feet wide, with the side next to the binding being flush with the floor of the building and 2$\frac{1}{8}$ inches higher than the sidewalk.

The facts conclusively show, we think, that the ramp was not built for the convenience of the public but for the use of the appellee.

The findings of the jury having support in the evidence, the trial court should have rendered judgment in accordance with the facts so found, and was not authorized to disregard them.

The judgment must therefore be reversed and judgment here rendered that appellant recover of appellee the sum of $500 damages as found by the jury.