CASE 51.—ACTION BY R. A. MARSEE AGAINST S. W. HAGER, STATE AUDITOR AND OTHERS FOR AN INJUNCTION IN PAYING A CERTAIN APPROPRIATION FOR NORMAL SCHOOLS.—April 24.

## Marsee v. Hager, State Auditor, &c.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

From a judgment dismissing his petition the plaintiff appeals.   Affirmed.

Schools and School Districts—Funds—Appropriation—Const., section 184, provides that state bonds issued in favor of the board of education and a specified amount of the stock of the bank of Kentucky shall be held inviolate for the sustenance of the common school system; that no sum shall be raised for education other than in common schools until the question of taxation is submitted to the voters, provided that "the taxes now imposed for educational purposes and for the endowment and maintenance of the agricultural and mechanical college shall remain until changed by law." Session Acts 1906, p. 393, c. 102 establishes a system of state

normal schools, and makes an appropriation for the benefit of such schools; the question of the appropriation not having been submitted to the voters. Held, that normal schools being among the institutions for which, under the proviso of section 184, the Legislature is authorized to make appropriations without submitting the question to the voters, Session Acts 1906, p. 393, c. 102, is valid.

CHINN & EDELEN and RHORER, AINSWORTH & DAWSON, for appellants.

### POINTS AND CITATIONS.

1. No sum raised by taxation for educational purposes shall ever be used except for education in common schools. (Constitution section 184; A. & M. College v. Hager, Auditor, etc., 27 Ky. Law Rep., 1180).

2. A normal school is not within the term "common school" as repeatedly defined by the Court of Appeals. (A. & M. College v. Hager, Aud. heretofore cited; Board of Education Covington v. Board of Trustees, etc., 113 Ky., 234; Collins v. Henderson, 11 Bush, 74; Underwood v. Wood, 93 Ky., 177; Halpert v. Sparks, 9 Bush, 259; People v. Chissey, 45 Huns (N. Y.)

3. Public policy as outlined by the Constitutional Convention requires that the education of teachers should be limited to the A. & M. College, because that is the only institution having normal teaching, which is expressly authorized by the constitution to receive aid from the Legislature.

LEWIS McQUOWN, Atty. for appellee.

ELI H. BROWN, JR., J. A. SULLIVAN, N. B. HAYS, Atty. Genl. and CHAS. H. MORRIS of counsel.

1. By common consent as well as by judicial utterances of this and other courts, the normal schools for the education of teachers, is in aid of the common schools, and this being an established fact, an appropriation for the purpose should be upheld upon the same principle and for the same reason that the appropriation for the department of education was sustained.

2. These schools have already been opened with full attendance of pupils, anxious to engage in this noble service of the State. If allowed to proceed, it will only be a few years before illiteracy will be banished from the State by this corps of enthusiastic young men and women.

3.   By this proceeding at the instance of appellant, who lists $300 worth of mountain land, and who will be required to pay less than one cent additional tax, this court is asked to stay the hands of those engaged in this great work.    No greater calamity could befall the State.   Although it has been six months since this suit was filed, and the widest publicity was given to its objects and purposes, no other citizen of the State has united in this attempt.   It is safe therefore for this court to assume that the attempt to bring this suit in behalf of all tax-payers and citizens of the State is only a shallow pretense by some others who are concealed in the back ground, to gain a standing in court. "The voice is Jacob's voice, but the hands are the hands of Esau.'

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This action involves the constitutionality of an act of the General Assembly of the commonwealth of Kentucky, approved March 21, 1906, which establishes a system of normal schools in the State, and creates a board of regents to manage and control them, and makes an appropriation of $50,000 for the benefit of the schools to be established.   See Sess. Acts, 1906, p. 393, c. 102.   The action was commenced by the appellant, R. A. Marsee, a citizen and taxpayer of Bell county, Ky., filing in the Franklin circuit court his petition seeking an injunction against the Auditor of the State, S. W. Hager, prohibiting him from paying over to the board of regents the sum of $50,000 appropriated for the establishment of the normal schools. It is not necessary to set out the allegations of the petition further than to say that they aptly raise the question of the constitutionality of the act, and that this is the sole question presented for adjudication.

In order to bring before the mind more clearly the object and purposes of the act in question, we will here insert the title, and the first and second sections of the body of the act.   They are as follows:

"An Act to establish a system of State normal schools in Kentucky; to create a board of regents for the general management thereof; to create a normal executive council, which shall determine the requirements for admission and graduation, and the courses of study of said schools; to create a commission which shall determine the location of said schools, and to apprepriate funds for their maintenance.

"Be it enacted by the General Assembly of the commonwealth of Kentucky:

"Section 1. There shall be established and maintained, as hereinafter provided, two State normal schools in this State, as follows The 'Eastern Kentucky State Normal School,' to be located in normal school district No. 1, and the 'Western Kentucky Normal School,' to be located in normal school district No. 2, the boundary of which normal school districts shall be fixed by a commission appointed by the Governor, for the location of normal schools, as hereinafter provided, and which districts shall, as near as may be, be equal in population.

"Sec. 2. The object of said State normal schools shall be to more fully carry into effect the provisions of section 183 of the Constitution of Kentucky, by giving to the teachers of the commonwealth such training in the common school branches, science and art of teaching, and in such other branches as may be deemed necessary by the normal executive council, hereinafter created, as will enable them to make the schools throughout the State efficient."

Appellant bases his claim of the invalidity of the act upon the proposition that it is in contravention of the provisions of section 184 of the Constitution, which is as follows: "The bond of the commonwealth issued

in favor of the board of education for the sum of one million three hundred and twenty-seven thousand dollars shall constitute one bond of the commonwealth in favor of the board of education, and this bond and the seventy-three thousand five hundred dollars of the stock in the Bank of Kentucky, held by the board of education, and its proceeds, shall be held inviolate for the purpose of sustaining the system of common schools. The interest and dividends of said fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose. No sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters, and the majority of the votes cast at said election shall be in favor of such taxation: Provided, the tax now imposed for educational purposes, and for the endowment and maintenance of the Agricultural and Mechanical College shall remain until changed by law.''

The question we have here was decided in the case of the Agricultural and Mechanical College v. Hager, 121 Ky. 1, 87 S. W. 1125, 27 Ky. Law Rep. 1178. That case involved the constitutionality of an appropriation by the legislature of the sum of $15,000 annually to the support and maintenance of the Agricultural and Mechanical College, this being in addition to the tax of one-half of 1 per cent. on each $100 worth of taxable property in the State authorized by the Constitution for the support of the college. The argument was made there, as here, that the appropriation was illegal because it was prohibited by section 184 of the Constitution. In the opinion in that case section 184 was analyzed and shown to consist of three distinct con-

stituent elements. The first contained a description of the common school fund, and the provision which prevents its diversion to any other purpose; the second the exclusion of other methods of public education by taxation, unless the question was approved by the voters of the State; and, third, a proviso which takes from without the foregoing provision of the section taxes then imposed for certain educational purposes. And it was pointed out that the framers of the Constitution, having fully safeguarded the common school fund, had authorized the legislature to make appropriations for the educational purposes mentioned in the proviso. It was further pointed out that, among the educational purposes contemplated by the proviso, are the Agricultural and Mechanical College and normal schools. It is true that, in enumerating the various institutions whose interests were protected by the terms of the proviso, the State normal school for colored persons was expressly mentioned in the opinion, and from this appellant seems to draw the conclusion that normal schools for white persons were necessarily excluded from the benefit of the proviso. This is entirely too narrow a construction of the language of the opinion. It was not intended by the enumeration of the various institutions set forth therein to present an exhaustive catalogue, but only to name certain institutions as illustrating the kind of educational interests which the convention intended to place within the benefit of the proviso. It was not intended to say that there were no other institutions, although they were not then in the mind of the court, for whose benefit the legislature might appropriate money from the treasury. In mentioning the State normal school for colored persons as one of the institutions for which appropriations from the

treasury are permissible, it was intended to convey the idea that normal schools, as a department of public education, whether for white or colored persons, are among the educational purposes embraced in the proviso of section 184. It would be a curious construction, indeed, that would establish the principle that the legislature might appropriate money for the benefit of a normal school for colored teachers, but not for white.

At the time the present Constitution was framed the normal school for white persons was carried on as a part of the Agricultural and Mechanical College, where it still, in part, is conducted. What the act in question does in practical effect is to separate this school into three parts, leaving one as a department of the Agricultural and Mechanical College at Lexington, Ky., and establishing two others at different points in the State, one at Richmond, and the other at Bowling Green, Ky. There is nothing in section 184, or any other part of the Constitution to which our attention has been directed, that militates against the power of the legislature to separate the normal school for white persons into as many parts as may be deemed appropriate and to divide the appropriation between the different schools, as may be thought proper. Certainly it will not be contended that the legislature lacks the power of making any appropriation it sees fit for the benefit of the normal school as conducted under the auspices of the Agricultural and Mechanical College. After setting forth the history and some of the misfortunes that had befallen the common school fund prior to the adoption of the Constitution, and the reasons which caused the members of the convention to safeguard the fund from any danger of future diversion or loss, it was said in the

opinion cited: "No one dreamed when a new Constitution came to be framed in 1891 that the commonwealth had tired in her efforts to furnish the best system her resources could provide for the education of the youth of the State, or intended to take a step backward; but, warned by the experience of the past, and desiring to be rid of those evils which had hampered, and, indeed, threatened, our whole system of State education, the convention sought to give the system stability, to make impossible the recurrence of the conditions just alluded to. Therefore we find the section of the Constitution dealing particularly with this subject placing forever beyond the reach of any other use the principal sum and its investments which had been raised and received for educational purposes. It was likewise made impossible that the annual contributions of taxes for school purposes should be even temporarily diverted from their intended end. It was next so provided that the State could not embark in any further partnership educational enterprises, at least until the matter had been first approved by the people. In drawing the lines for safety about these matters which had been so disturbed and endangered, it was seen that the terms employed were so strict that possibly other institutions of learning belonging to the State, and forming no less a part of its system of popular education, might be hampered by a literal construction of the words; hence the proviso that forms the exception to what has been said—that rescued what followed from what had gone before. We have seen that those institutions were as if named in the excepting clause. Therefore, as to them, the legislature was left free to continue, and, indeed, they were in terms continued by the Constitution itself, till such

time as it might be 'changed by law.' It could scarcely be claimed that the convention had the thought, or that the language used, in view of the conditions, admits of it, that for all the other means of public education the convention intended that the legislature might deal with them as varying conditions seemed to demand, while of these particular institutions, also essentially and entirely educational and so long established and maintained by the State as to be no longer experiments, the legislature might not provide for them as their exigencies might seem to require from time to time. The language does not so restrict the purpose. It would have been unnatural and inharmonious with the general plan disclosed by the whole section. The taxes imposed for those institutions were to remain 'until changed by law,' implying plainly that existing appropriations were continued, and further appropriations were allowed, or all might be lowered or discontinued in part or entirely as the law-making department of the government might deem most expedient." This is conclusive of the question at bar. Normal schools are among the institutions for which, under the proviso of section 184, the legislature is authorized to make appropriations without submitting the question to a vote of the people; and therefore the act under discussion must be held valid.

The judgment of the trial court, sustaining the general demurrer to the petition, and dismissing it upon the failure of the appellant to amend, is affirmed.