## J. E. M. Milling Company v. Gaines.

(Decided December 3, 1929.)

B. L. KESSINGER and HUNT & BUSH for appellant.

POLK SOUTH, Jr., and CARROLL & CARROLL for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Miss Bird Gaines stepped into what she designated as a "rough, rugged hole" in a sidewalk in the city of Frankfort on August 10, 1928, while she was exercising ordinary care for her own safety, with the result that she was painfully injured. She instituted an action in the Franklin circuit court to recover damages from the J. E. M. Milling Company, the Lexington Roller Mills Company, the Gulf Refining Company, and Charles Duvall. The J. E. M. Milling Company was the owner of the lot abutting the sidewalk where the hole existed that caused the injury to Miss Gaines. The Lexington Roller Mills Company, so it is alleged in the petition, owned the stock of the J. E. M. Milling Company. The Lexington Roller Mills Company passed off of the stage without any explanation, and it is not a party to this appeal. Charles Duvall was a tenant of the property belonging to the J. E. M. Milling Company at the time the gasoline pump hereinafter referred to, the removing of which caused the hole in the sidewalk, was installed. The Gulf Refining Company installed the pump, and in doing so it cut a circular hole in the sidewalk about 25 inches in diameter, removing the concrete from the pavement so that it could dig the hole for the placing of the pump. The pump was in operation from the time it was installed until about December 1, 1927, when Duvall, with the mutual consent of the J. E. M. Milling Company, canceled his lease, and, with the mutual consent of the Gulf Refining Company, ceased to operate the pump. The pump was installed by the Gulf Refining Company at the instance and request of Duvall, the tenant, and for his use in dispensing gasoline. The J. E. M. Milling Company received no benefit in any way by reason of the installation of the pump. It had made a rental contract with Duvall, and the rental was not increased after the installation of the pump. The pump was removed from the sidewalk by the Gulf Refining Company about April 1, 1928, and the hole existed in the sidewalk from that date until August 10th, although there was an effort made to fill the hole soon after the pump was removed. But it is not seriously contended that there was not a defect in the sidewalk by reason of the removal of the pump. The lease between Duvall and the J. E. M. Milling Company was executed on April 1, 1927, and was to run for one year, at a monthly rental of $60. The con-

tract for the installation of the gasoline filling station, of which the pump was a part, between the Gulf Refining Company and Duvall, was executed on April 19, 1927. Title to the filling station equipment remained in the Gulf Refining Company. This equipment consisted of a 500-gallon tank, a 10-gallon pump, and connecting pipe lines. Duvall was to operate the station by dispensing therefrom gasoline of the Gulf Refining Company only. By the terms of the lease executed by the J. E. M. Milling Company to Duvall there was no right in Duvall to install the filling station, or to use the premises as a gasoline station. The milling company made no objection, however, to the installation of the filling station, and, in fact, consented to it. The property leased by Duvall is located at 405 on the east side of Ann street. The office of the J. E. M. Milling Company is located opposite on the west side of Ann street. The consent of the J. E. M. Milling Company was a formal matter, as the city council granted permits for filling stations only when abutting property owners consented.

The 500-gallon tank was placed under the lot owned by the J. E. M. Milling Company. The pump was placed on the sidewalk. A hole was dug in the sidewalk in which the pump was placed. The connecting pipe line ran from the pump to the tank, and was laid under the sidewalk. The sidewalk was of concrete. It was cut to make the hole for the pump and also so that the pipe line might be laid. That part of the sidewalk removed to make a place for the pipe line was replaced with concrete. The pipe line connecting the tank with the pump was attached to the pump by means of an elbow pipe.

Duvall operated the filling station until December 1, 1927. In November 1, 1927, he notified appellant that he intended to vacate and surrender the premises a month later. He also notified the Gulf Refining Company of his intention to surrender the premises, and directed that company to remove its filling station equipment. The milling company consented to the cancellation of its lease and accepted the premises from Duvall with the filling station installed. The refining company, either by consent or at least without complaint, allowed Duvall to terminate the contract. The milling company was in the possession of the premises from December 1, 1927, until the filling station was removed by the refining company in the latter part of February, 1928. It did nothing about the filling station. It had not installed it, did not

use it, and gave no orders concerning it. The station was not operated after Duvall left. When the pump was removed in the latter part of February, the hole was not filled with concrete and a slight depression was left in the sidewalk where the pump had stood. The hole was filled with cinders. The sidewalk remained in this condition, evidently with the knowledge of the milling company, until the date of the injury to Miss Gaines. The milling company did nothing about the hole in the sidewalk. It leased the premises to Lehman on April 1, 1928. At that time the hole was 4 or 5 inches deep.

Issue was joined between the plaintiff, who is appellee in this court, and the defendants, one of which, the J. E. M. Milling Company, is appellant. The trial resulted in a verdict in favor of Miss Gaines for the sum of $6,800 against the Gulf Refining Company and the J. E. M. Milling Company; the jury saying in the verdict that they were equally responsible. Judgment was entered against each for $3,400. The Gulf Refining Company satisfied the judgment against it, but the J. E. M. Milling Company has appealed.

Many grounds are urged for the reversal of the judgment, but we shall consider first the main question, that is, whether the appellant, under the facts, can be held responsible for the damages sustained by appellee caused by her stepping into the hole in the sidewalk. Counsel for appellee take the position that appellant owed a duty to the appellee of repairing the sidewalk when the pump was removed, and that it should have seen to it that the sidewalk was placed in a reasonably safe condition for public travel; that it failed in the performance of that duty, and, as a direct result of its negligence, appellee was injured, and, therefore, the judgment should be affirmed. It all goes back to whether appellant owed a duty to the public to repair the sidewalk when the pump was removed. Was the appellant guilty of negligence in failing to make the sidewalk reasonably safe for public travel? If it owed the duty to the public to maintain the sidewalk in a reasonably safe condition for public travel it was negligent in its failure to perform that duty. But there is no negligence on the part of appellant unless it was under an obligation to the public to see that the sidewalk was maintained in a reasonably safe condition for public travel. It did not injure the sidewalk and neither did it receive any benefit from the installation of the filling station. It is true it

acquiesced in the placing of the pump on the sidewalk adjacent to its lot. It did not remove the pump. It did nothing in connection with the whole matter other than to stand by and see the pump installed and operated on the sidewalk adjacent to its premises. It stood by inactive when the pump was removed, and it continued to stand by inactive after the pump was removed leaving the hole in the sidewalk.

It is argued by counsel for appellee that appellant may have prevented the use of its premises for the installation of the filling station, or that it may have refused to accept possession of the premises from Duvall on December 1, 1927, until and unless the pump was removed and the sidewalk repaired, or that it may have required the Gulf Refining Company to remove the tank from its premises as soon as Duvall left. It is true that appellant may have done all of these things, but, if it was under no duty to do them, its failure does not constitute negligence.

It is also argued by appellee that the filling station could not have been installed without the consent of appellant. It is probably true that it could not have been installed without the consent of other property owners. That appellant consented along with other property owners to the installation of the filling station did not place on it a duty to see that the pump was removed and the sidewalk repaired when the filling station was abandoned. It is true that the 500-gallon tank was under the premises of appellant, and that the pump would have been useless without the tank and the connecting pipe line. But this controversy does not revolve around the removal of the tank or the pipe lines, but is confined solely to the condition of the sidewalk left by the removal of the pump. It is argued, with force, that, appellant having allowed the installation of the filling station which constituted a servitude and burden on the sidewalk abutting it, it should be held responsible for the condition of the sidewalk as left when the pump was removed, as the pump was a necessary and integral part of the filling station equipment. It is also argued that the filling station was erected for the special, private, and peculiar benefit of appellant's property, and that indirectly the filling station benefited the appellant, in that it made its property more suitable for use by its tenants, and more valuable for rental purposes.

784

In support of her contention, counsel for appellee cite and discuss a number of cases. In the case of Webster v. C. & O. Ry. Co., 105 S. W. 945, 32 Ky. Law Rep. 404, the rule was announced that an abutting property owner is not liable for defects arising from ordinary wear and tear in a sidewalk abutting its property. In that case it was sought to hold a railroad company liable for the condition of the sidewalks adjacent to its property. The court, after stating that it was the duty of the railroad company to keep in reasonably safe repair for public travel the premises owned and controlled by it, said: ''But this duty does not extend to streets or sidewalks that are not owned or under the control of the company. In respect to them, railroad companies are under the same obligations as other abutting property owners. There is no good reason why a railroad company should be held to a higher degree of care or responsibility for defects in sidewalks or streets adjacent to its premises than other property owners.''

In the case of City of Louisville v. Metropolitan Realty Co., 168 Ky. 204, 182 S. W. 172, 173, the court had under consideration facts showing that the realty company was the owner of a house abutting on the sidewalk in the city of Louisville. At the time it purchased the house, a down spout on it connected with a metal drainpipe crossing the sidewalk. A pedestrian stepped into a hole in the drainpipe which had been caused by rust. He obtained judgment for damages against the city, and the city sought indemnity from the realty company. The court, in passing on the responsibility of the realty company, again stated the general rule that a property owner is not responsible for the condition of the sidewalk adjacent to his property, and went further and said: ''Moreover, if other persons, not for any use or benefit of the property owner or by his procurement, or for the use or benefit of his property, place obstructions upon the walk, either permanent or temporary, no duty devolves upon the property owner to remove such obstruction, and, of course, no liability to any one who may be injured by reason thereof.''

This opinion makes it clear that appellant was not responsible to appellee by reason of any damages she received on account of the defective condition of the sidewalk, if the hole was left in the sidewalk by other persons not for any use or benefit of the property owner, and not by his procurement. It should be kept in mind

that it was not the filling station that caused the damages to appellee, was not the pump which was a part of the equipment of the filling station, neither was it the removal of the pump, but it was the condition in which the parties removing the pump left the sidewalk that was the cause of the injury to appellee.

In the case last quoted from, the court further said: "Whensoever the use of the walk which produces the obstruction constitutes a servitude on the walk for the private benefit and use of a third party, or his property, such third party, or property owner, is liable to the party injured for the original construction in the one instance, or the failure to repair in the other."

Under this authority, if appellant had itself installed the filling station for the use of its property, it may be that it could be held responsible for the damages occasioned by the failure to repair the sidewalk, but the evidence does not establish that the filling station was installed for the private benefit of appellant, or its property. The facts are the other way. It received no additional rent by reason of the installation of the filling station, and, after it was installed, the tenant did not occupy the premises for the full period covered by his lease. The property was not again rented until the expiration of four months from the date that the tenant moved out. In the meantime the filling station was dismantled without protest or objection on the part of appellant. There is nothing to indicate that the servitude on the sidewalk was for the private benefit of the property owner. It is true that it made no objection to the installation of the filling station, but, if there was any private benefit, it was to the tenant, and that benefit, if any, stopped with the tenant.

Another case relied on by appellee is Hippodrome Amusement Co. v. Carius, 175 Ky. 783, 195 S. W. 113, 115 L. R. A. 1918E, 377. In this case a drinking fountain with a water box was put in the sidewalk in front of the property of the amusement company. The amusement company installed the fountain presumably for the convenience of its patrons and a type of advertising. Carius was injured by stepping into a hole caused by the water box. Judgment was obtained against the city and the amusement company. In affirming the judgment, this court said: "So it seems to be settled in this jurisdiction that if the unsafe condition of the sidewalk arises from the act of the abutting property owner, or arises

from an extraordinary use permitted him in the use of the sidewalk for purposes of his own, and that the sidewalk is burdened with a servitude for his benefit or that of his property, and he appropriates the use of the contrivance which constitutes the servitude, he is jointly and severally liable, to individuals, with the city for the injuries sustained by individuals on account of the unsafe condition of the sidewalk.''

That is sound law, but the facts in the case under consideration do not bring it within the rule therein announced. Appellee did not appropriate the use of the contrivance—that is, the filling station which constituted the servitude—and neither was it shown that the servitude was for its benefit.

Neither is the opinion in the case of City of Newport v. Schmidt, 191 Ky. 585, 231 S. W. 54, in point. In that case the city had permitted the amusement company to extend its tile lobby into the sidewalk and to replace the concrete sidewalk with tiling in which the name of the amusement company appeared. Mrs. Schmidt slipped on the tiling and fell. The amusement company was held responsible because it was making a direct use of the sidewalk for the benefit of its property.

It is the general rule that the property owner is under no duty to repair a public sidewalk adjoining his property. Appellee is not entitled to recover unless she can show, by the facts, that her case does not fall under the general rule. The facts which she has established do not bring her case under any of the modifications of the general rule, and to uphold her contention would require the establishment of a new modification which we do not believe should be made.

It is also the general rule that a landlord is not liable for the negligence of his tenant in the use of the leased premises. He is not liable for the negligence of the tenant in the use of adjacent sidewalks. This seems to be established by the opinions in the cases of Morris v. Roberson, 137 Ky. 841, 127 S. W. 481, 136 Am. St. Rep. 323; City of Louisville v. Metropolitan Realty Co., supra; Hippodrome Amusement Co. v. Carius, supra; City of Newport v. Schmidt, supra. To the same effect, are the following text-books: 43 C. J. 1119; 13 R. C. L. 328, 16 R. C. L. 1074.

It is next argued by counsel for appellee that allowing the pump to remain on the street after it was no longer in use constituted a nuisance. We are not inclined

to disagree with their contention on this point. 46 C. J. 703, states that electric poles placed in the streets for the purpose of lighting them, but no longer in use, are held to constitute a nuisance. But, assuming that the leaving of the pump on the sidewalk after the operation of the filling station had ceased constituted a nuisance, still, as appellant did not create the nuisance, did not maintain it, and did not operate the pump, it could not be held responsible for the condition of the sidewalk. But it is argued by counsel for appellee that the appellant did, in fact, maintain the nuisance by allowing its property to be used in the continuance of it. The answer to that is that the sidewalk was not the property of the appellant, and that the allowing of the pump on the sidewalk did not cause the injury. It was the removal of the pump and the leaving of the hole that brought about the injury. Counsel for appellee rely on the case of Southern Railway Co. v. Com., 101 S. W. 882, 31 Ky. Law Rep. 122, 12 L. R. A. (N. S.) 526. The case is not in point. In that case the railroad company permitted a common nuisance on its premises by allowing a band of laborers, quartered in one of its work trains and occupying a side track on its railroad, to continue for weeks noisy, boisterous, riotous conduct, shooting firearms on appellant's premises and near the station and public highway so as to alarm the neighborhood and those having occasion to pass that way. The nuisance there was allowed on the property of the railroad company. They also rely on Huber v. Com., 102 S. W. 291, 31 Ky. Law Rep. 320. That case is not in point. The facts there showed that the landlord rented his property for pool room purposes, or that he actually knew of such purposes when he rented it, or had control over the matter even after renting it, and knowingly suffered a gaming house to be continued there. The nuisance there was on the premises of the landlord.

We fail to find any merit in the contention that appellant should be held responsible because there was a nuisance on the sidewalk adjacent to its property when it is not shown that it was responsible in any way for the creation or maintenance of the nuisance. Counsel for appellee have most skillfully presented the case in a light very favorable to their client, but their contentions cannot be upheld without a departure from established principles of law. It is our conclusion, under the facts presented, that appellant was not responsible for the in-

juries received by appellee, and that the court should have so instructed the jury.

Judgment reversed, and cause remanded, for proceedings consistent with this opinion.

Whole court sitting.