Dorothy E. HIRSCHAUER and John
Richard Hirschauer, Appellant
(Plaintiff Below),

v.

C & E SHOE JOBBERS, INC., Appellee
(Defendant Below).

No. 1–481A121.

Court of Appeals of Indiana,
Fourth District.

June 3, 1982.

J. Lee McNeely, McNeely & Sanders, Shelbyville, for appellant.

John P. Price, David C. Campbell, Bingham Summers Welsh & Spilman, Indianapolis, for appellee.

MILLER, Presiding Judge.

Plaintiff-appellants Dorothy and John Hirschauer are appealing a summary judgment rendered in favor of defendant-appellee C & E Shoejobbers, Inc. (C & E) with respect to their damage complaint for injuries suffered by Mrs. Hirschauer when she slipped and fell on a slick public sidewalk in Shelbyville, Indiana, in front of property which C & E, as original lessees, had subleased to a third party. On appeal, the Hirschauers contend C & E had a duty to remove ice or snow and that summary judgment was therefore improper, and that summary judgment was also improper because there was a material issue of fact as to whether C & E or its unspecified agents negligently attempted to remove ice and snow or had "control" of the sidewalk so as to be responsible for its condition. Because C & E had no duty to remove ice and snow and the Hirschauers have in essence improperly rested on the mere allegations of their complaint with respect to their other possible theories of liability, the trial court's grant of summary judgment in favor of C & E is affirmed.

## FACTS

The basic facts may be summarized as follows: By published deposition, Dorothy Hirschauer asserted that on January 30, 1978, she was walking on the sidewalk of Washington Street in downtown Shelbyville to her place of employment. It was not snowing that day, although it was cold, and a bad snow storm had occurred the previous week. The sidewalk, which had been cleared, was still "spotchy" in places. There was a bank of snow piled high at the edge of the sidewalk by the curb. Dorothy Hirschauer conceded in her deposition she had "no idea" who had removed the snow.

According to Dorothy, she was walking carefully, was wearing snowboots, and proceeded as close to the buildings as she could, where the sidewalk had been cleared off. When she was in front of the building at 48 East Washington Street, however, she slipped and fell—apparently on ice or snow—and broke her hip. Dorothy Hirschauer stated "evidently" there was ice under patches of snow, and that "I just went down so hard I don't even know what hit me—I must have hit ice under the snow or something." The first thing she saw when she looked up after falling was a sign that said "Shoe World."

Following her fall, Dorothy filed a complaint[1] for $50,000 in damages against C & E which alleged, in pertinent part:

"1. On or about January 30, 1978, the plaintiff, Dorothy Hirschauer, was a pedestrian walking on the travelled portion of the sidewalk on West [sic] Washington Street in Shelbyville, Indiana, in front of a store and on property owned and/or leased by the defendant herein.

2. On said day, as a direct and proximate result of the negligence and carelessness of the defendant, C & E Shoe Jobbers, Inc., the plaintiff, Dorothy E. Hirschauer, slipped and fell, causing her great and serious personal injury.

3. The defendant, C & E Shoe Jobbers, Inc. was negligent and careless in the following particulars:

a. It negligently and carelessly maintained a sidewalk that was slick and icy;

---

1. Count II stated her husband's cause of action, which incorporated the allegations of "negligence and carelessness" set out in Dorothy's demand, and requested $20,000 in damages for lost services of Dorothy Hirschauer.

b. It negligently and carelessly failed to properly clear and remove the snow and ice from the public sidewalk on their property;

c. It negligently and carelessly attempted to remove the ice and snow from the public sidewalk on their property but negligently and carelessly allowed the sidewalk to remain in a slick condition;

d. It negligently and carelessly created a condition on a public sidewalk more dangerous than had previously existed;

e. It negligently and carelessly invited the general public to transverse over their property, when they knew, or in the exercise of reasonable care should have known, that the sidewalk was slick, hazardous and dangerous."

C & E submitted its answer in general denial and asserted by deposition of its president and sole shareholder, Jerome Epstein, that it had operated "Shoe World," a retail shoe outlet, at the location in question until October, 1977, when the company went out of business. At that time, C & E made a bulk sale of its business to a buyer associated with Thomas Market of Shelbyville, and orally subleased the premises to the buyer.[2] Epstein also stated "the understanding was they had to be out of there on January 31, 1978, because I had no lease after that," since Epstein had paid the original lessor $1,000 or $1,500 to terminate the lease on that date. According to Epstein, the buyer's plan was to "partially" move the inventory to a new shopping center location during the sublease, and to attempt "to sell as much as they could from November 1 until the opening of, the completion of the shopping center room." Epstein said the bulk sale was part of a "franchise concept" which permitted the buyer to use the name Shoe World, although the buyer ultimately adopted the name "Nancy's Country Shoe World" for its business. Epstein said he hoped the buyer would purchase whole-

sale goods from C & E, and that it did so for a "very short time" until the shopping center location was transferred to another party in "less than a year."

According to Epstein, C & E continued to make rental payments on the Washington Street property during the sublease term, and was reimbursed by the buyer pursuant to their sublease agreement. He also stated the buyer did *not* "undertake to perform any of the terms or conditions of... [C & E's original] lease agreement as part" of the sublease transaction. The original lease agreement, which was introduced as an exhibit by C & E and Dorothy Hirschauer,[3] stated the lease pertained to the "[g]round floor and Basement of building located at 48 East Washington Street," and further provided the lessee (C & E) "shall keep the premises in a clean, sightly and healthful condition," and that if it fails to do so, the lessor may undertake such responsibilities. Additionally, the lease also stated the lessor "shall not be liable to Lessee" for damage or injury to any party occasioned by failure of the lessor to keep the premises in repair," and that the lessee agrees to maintain appropriate insurance and indemnify the lessor against any claims arising out of the use of the premises.

Upon C & E's motion for summary judgment with respect to the Hirschauers' complaint, the parties moved to publish their depositions, the pertinent portions of which have been summarized above. Submitted with and incorporated in C & E's motion for summary judgment was an affidavit of Epstein asserting C & E had never owned the property at 48 East Washington Street, and the following:

"4. C & E Shoe Jobbers, Inc. did not occupy or possess the premises adjacent to the public sidewalk at 48 East Washington Street in Shelbyville, Indiana on January 30, 1978.

---

2. Epstein stated there was an oral sublease agreement, and that there may have been some written notation on the bill of sale retained by the buyer.

3. It should be noted in this context that both copies of the lease accompanying the transcript are to some extent illegible, and thus do not permit this Court to glean all the precise terms of the agreement.

5. C & E Shoe Jobbers, Inc. did not do any snow removal of the public sidewalk adjacent to 48 East Washington Street in Shelbyville, Indiana on January 30, 1978 or at any time for at least sixty (60) days prior thereto."

After hearing, the trial court determined there were no issues of material fact between the parties and that defendant C & E Shoe Jobbers, Inc. was entitled to judgment against the Hirschauers' as a matter of law. Following such judgment, Dorothy Hirschauer filed her Motion to Correct Errors, to which was attached an affidavit of Dorothy Hirschauer (which was not alleged to be based on her personal knowledge) which asserted C & E had "control" of the leased premises on January 30, 1978, based on their original lease agreement, and:

"4. That individuals unknown to affiant but believed to be employees or agents of C & E Shoe Jobbers, Inc. undertook to clear the natural accumulation of snow from the sidewalk adjacent to the building located at 48 East Washington Street, Shelbyville, Indiana.

5. That the attempt to clear the natural accumulation of snow created a more hazardous condition which was a proximate cause of affiant's fall and injuries on January 30, 1978."

Her motion was denied, and the instant appeal ensued.

## DISCUSSION

Although the Hirschauers have confusingly stated a myriad of overlapping and mislabelled issues for our review (29 in all), when combined and restated these issues are as follows:

1) Whether or not there is, or should be, a common law duty upon the owner or occupant (or sublessor) of a building abutting a public sidewalk to clear the sidewalk of a natural accumulation of ice and snow; and

2) Whether or not there was a material issue of fact C & E undertook such a duty, directly or indirectly, by attempting to remove snow from the public sidewalk adjacent to 48 E. Washington Street,

Shelbyville, Indiana, on or before January 30, 1978.

Of course, these issues have been raised in the context of a summary judgment proceeding, with respect to which our courts have generally observed that summary judgment is proper only where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits and testimony, disclose that no genuine issues as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Whipple v. Dickey* (1980) Ind.App., 401 N.E.2d 787. To be considered genuine for summary judgment purposes, a material issue of fact must be established by sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial, *Stuteville v. Downing*, (1979) Ind.App., 391 N.E.2d 629, although the facts established by the party opposing the motion must be taken as true and all doubts must be resolved against the proponent. *Boswell v. Lyon*, (1980) Ind.App., 401 N.E.2d 735. The function of the material filed in support of a motion for summary judgment is to enable the court, by piercing the pleadings, to establish the existence, or non-existence, of a genuine issue of fact. *Pan American World Airways, Inc. v. Local Readers Service, Inc.*, (1968) 143 Ind.App. 370, 240 N.E.2d 552, 555.

Initially, because of their tendency to help determine whether there are any *material* issues of fact in the instant case, we consider the Hirschauers' arguments regarding the various duties of an owner or occupant of a building to remove ice and snow from an abutting public sidewalk.

Contrary to the Hirschauers' suggestion, which is apparently based on cases involving private walkways and property as opposed to public sidewalks, it is settled law in this jurisdiction that an owner or occupant of a building abutting a public sidewalk has *no* duty to remove ice and snow from the sidewalk abutting its building. *Hammond v. Allegretti*, (1974) 262 Ind. 82, 311 N.E.2d 821; *Nyers v. Gruber*, (1971) 150

Ind.App. 117, 275 N.E.2d 863; *Halkias v. Gary National Bank*, (1968) 142 Ind.App. 329, 234 N.E.2d 652; *Personnett v. Great Atlantic & Pacific Tea Co.*, (1968) 142 Ind. App. 698, 237 N.E.2d 281; *Cowin v. Sears Roebuck & Co.*, (1955) 125 Ind.App. 624, 129 N.E.2d 131. Neither is such a duty created by municipal ordinance. *Nyers v. Gruber, supra; Personnett v. Great Atlantic Pacific Tea Co., supra; Cowin v. Sears Roebuck & Co., supra.*[4]

In contrast to the "no duty" rule stated above, however, the Hirschauers have observed there may be a duty not to create or enhance a hazard by virtue of negligent snow or ice removal. *See Halkias v. Gary National Bank, supra* (trial court did not err in directing verdict for bank where evidence did not reveal bank was responsible, as alleged, for pieces of ice on partially-cleared sidewalk where plaintiff fell). *See generally Franzen v. Dimock Gould & Co.*, (1960) 251 Iowa 742, 101 N.W.2d 4, *cited in Annot., "Liability of Owner or Occupant for Condition of Sidewalk,"* 88 A.L.R.2d 331, 392, where the court found a property owner liable for the dangerous condition of a public sidewalk based on evidence the owner had deposited additional snow so as to create an artificial and dangerous condition. C & E has not disputed such a duty may exist where one undertakes to remove ice and snow, and, accordingly, such principle must be viewed as the law of this case. The important question to be considered below, however, is whether or not there was a material issue of fact that C & E had

undertaken to remove ice and snow from the sidewalk abutting the premises.

■ As noted above, an important function of materials filed in response to a motion for summary judgment is to permit the court to pierce the pleadings and establish the existence (or lack of it) of material factual issues. In the case at bar, the Hirschauers alleged C & E carelessly maintained a sidewalk and had "created a condition on a public sidewalk more dangerous than had previously existed,"[5] and in her supporting deposition Dorothy Hirschauer revealed such condition consisted of a sidewalk from which snow had been partially cleared, and which may have had ice under the patches of snow.[6] In response, as noted above, C & E submitted a deposition which revealed it had subleased the premises, and also filed an affidavit—not specifically controverted by the Hirschauers—which asserted C & E "did not do any snow removal" on the sidewalk at any time for at least 60 days prior to the accident. Dorothy Hirschauer's affidavit accompanying her Motion to Correct Errors cannot be viewed as creating a material factual issue with respect to C & E's alleged efforts at snow removal, since her affidavit did not state it was based on personal knowledge as required by Ind.Rules of Procedure, Trial Rule 56(E), and, in any event, merely offered a conclusion of law that C & E had "control" of the premises by virtue of its lease, and speculated that "individuals believed to be employees or agents of C & E" attempted to clear snow from the sidewalk. Dorothy Hirschauer conceded in her deposi-

4. Consequently, the Shelbyville City Code (which the Hirschauers do not rely on in their brief) creates no private right of action or corresponding private duty on an owner or occupant.

5. We note the Hirschauers have presented no theory on appeal which would support recovery under their alternative allegation that C & E "negligently and carelessly allowed the sidewalk to remain in a slick condition...." Clearly, such allegation does not comport with the theory C & E somehow made the sidewalk *more hazardous*, and, as we have determined above, C & E had no common law duty to remove ice and snow. The Hirschauers have also not specifically discussed in their appellate

brief any theory which would support recovery based on the allegation C & E "negligently and carelessly invited the general public to transverse over their property, [sic] when they knew, or in the exercise of reasonable care should have known, that the sidewalk was slick, hazardous and dangerous."

6. While the complaint may be broad enough to cover other possible dangers, including ones not necessarily limited to conditions involving snow and ice, the supporting deposition enables this Court to look beyond such sweeping allegations to ascertain the precise controversy at hand. *Pan American World Airways, Inc. v. Local Readers Service, supra.*

tion she did not know who had undertaken such efforts, and reiterated in her affidavit the "individuals" in question were "unknown to affiant." Moreover, such belated filing of her affidavit *following* the summary judgment proceedings were apparently in violation of the precept that a party may not simply offer by affidavit in connection with a motion to correct errors, evidence which he neglected to present at the prior proceeding. *Collins v. Dunifon*, (1975) 163 Ind.App. 201, 323 N.E.2d 264.

Thus, the trial court was faced with the uncontroverted, verified statement of C & E that they did not attempt to clear the sidewalk, and therefore no material issue of fact remained on this theory. However, despite such failure to negate C & E's assertion it had not attempted to remove any snow,[7] the Hirschauers assert liability may be based on either of two other theories, with respect to each of which they contend there was a material issue of fact.

The first of these theories relied upon by the Hirschauers is that some unspecified "agent" of C & E attempted snow and ice removal. Concededly, the Hirschauers' complaint may be broad enough to encompass such a theory, although it makes no mention of agency or imputed tort liability. Under the express provisions of Trial Rule 56(E), however, "[w]here a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing there is a genuine issue for trial." (Emphasis added.)

Here we must conclude C & E established its position of non-liability by asserting by affidavit it had not undertaken any snow removal, and that the Hirschauers failed to meet their corresponding burden by setting forth any "specific facts" involving an agent of C & E who did attempt such task. Although there was evidence, in the form of Epstein's deposition, that C & E had subleased the premises to a third party, the Hirschauers did not assert such party had attempted to remove ice or snow.[8] Moreover, the deposition did not reveal the new tenant acted as C & E's "agent," although Epstein acknowledged he hoped the tenant would buy from C & E and that the tenant had the option under the bulk sale arrangement of using the name "Shoe World," an option it did not exercise. The law is well-settled that

> "[t]he relation of landlord and tenant, in the absence of stipulations to the contrary, imposes upon the tenant certain duties in connection with the use of the property, but in itself involves no idea of representation or agency such as will render the landlord responsible to third persons for the torts of the tenants with respect to the use of the demised property... Generally it may be said that while the landlord is liable for injuries resulting from the condition of the premises at the time of the execution of the lease and from nuisances existing thereon at that time, it is the tenant who is liable for the negligent use of the premises and for defective conditions arising subsequently to the letting of the premises,

---

7. At oral argument, the Hirschauers claimed their failure to negate C & E's affidavit was based on their understanding that C & E's motion for summary judgment was founded *solely* on its lack of liability because it did not occupy, possess or control the premises. This claim by the Hirschauers, which was not raised in their motion to correct errors, is inaccurate. Epstein's affidavit stating C & E had not undertaken to clear the sidewalk was included in a memorandum which was attached to and made a part of the motion for summary judgment, and such motion claimed C & E was "entitled to judgment as a matter of law... as more

particularly set out in the pleadings and in the *Memorandum in Support hereof, which is attached hereto and made a part hereof.*" (Emphasis added.)

8. We note in this regard that Dorothy Hirschauer's deposition revealed the sidewalk on Washington Street had been scraped or shoveled "[a]long the whole length of the street" between the corner of Pike and Washington streets and her employer's business, and that there were about "three buildings" between the scene of the accident and the hardware store where she worked.

while they are in his control and possession."

49 Am.Jur.2d *Landlord and Tenant* § 908 at 888 (1970). In addition, the allegation by C & E it had not cleared the sidewalk would encompass acts by its agents, since, of course, a corporation may only act through its agents. 7 I.L.E. *Corporations* § 191 (1958). We find no issue of material fact with respect to alleged unidentified agents of C & E who undertook to remove ice and snow.

The Hirschauers next assert, somewhat confusingly, that C & E had "control" of the premises by virtue of its lease arrangement so as to make C & E liable for the acts of third parties in negligently removing ice and snow, and that by C & E's failure to deny such control there was a material factual issue. The Hirschauers' theory is apparently based on the statement, found in a variety of authorities, that a landlord or owner of demised premises may be liable for dangers or defects which exist *in the premises* where the landlord or owner retains control of such premises. *See generally Great Atlantic & Pacific Tea Co., Inc. v. Wilson*, (1980) Ind.App., 408 N.E.2d 144 (defendant who had surrendered possession and control of premises was not liable for injuries occurring after defendant's lease term expired when prospective purchaser being shown through premises by realtor fell through opening in floor of building, although opening was created for defendant's use when the building was built). Thus, it has been stated:

"The liability of the landlord is as a general rule, suspended as soon as he surrenders possession and control of the premises in good condition to the lessee. He is not, in the absence of any assumption of liability by reason of a covenant to repair, or of any statutory imposition of liability, liable to strangers for injuries and damage caused by the negligence of his lessees while they are in possession, occupancy, and control of the demised premises, provided that the premises were in good condition at the time they were leased."

49 Am.Jur.2d *Landlord and Tenant* § 908 at 888–889 (1970). Similarly, the rule has also been expressed that

"the lessor cannot escape his duty of exercising reasonable care to maintain his property in reasonably safe condition unless he parts with the entire possession and control of the premises; he is liable for injuries to travelers to the extent to which he retains control of the premises.... The liability incurred by the landlord by virtue of his retention of control is limited by the purposes for which such control is to be exercised."

39 Am.Jur.2d *Highways, Streets, and Bridges* § 369 at 757–58 (1968).

 Of course, it may not be suggested that a landlord, owner or sublessor who has no duty to remove ice and snow from a sidewalk is encumbered with such duty merely by virtue of the "control" he may retain over his premises, since such an exception would easily supplant the rule itself. The owner or occupant is not an insurer of the safety of pedestrians using the abutting sidewalk. *Halkias v. Gary National Bank, supra*. In this context, it is apparent the Hirschauers' emphasis on "control" is misplaced, since the basis of the rule depends on the landlord or owner's right to admit or exclude people and thus prevent injury, 65 C.J.S. *Negligence* § 90 at 1038 (1966) and cases cited therein, a power which clearly has little relevance to a public sidewalk made dangerous by the acts of unknown individuals.

Moreover, whatever "control" C & E may have retained by virtue of its sublease arrangement [9] clearly encompassed only the premises in question, which, of course, did not include the public sidewalk under the undisputed lease terms. Thus, in *Knickerbocker v. City of Scranton*, (1942) 344 Pa. 317, 25 A.2d 152, the Pennsylvania Supreme

---

9. As noted above, C & E originally contracted with its landlord to maintain *the premises* in a "clean, sightly and healthful condition," a duty which C & E may have retained when the premises were subleased to a new party, since Epstein stated the tenant did not undertake to perform the various covenants of C & E's original lease.

Court considered, in a somewhat similar context, whether a landlord's reservation of a right to enter his demised "premises" would impose liability on him for defects in an abutting sidewalk which occurred where a coal truck, delivering coal to the tenant, broke a flagstone. The Court there noted, in affirming a judgment for the landlord that

> "[h]ere plaintiff was injured outside the premises as affected by the reservation of the right to enter and make repairs. The injury was occasioned by a defect in the sidewalk abutting on the premises and set aside for the use of the public. A defect such as formed the basis of recovery here affected persons who, as part of the public, used the sidewalk and not those who entered the premises· by virtue of any right created between lesser and lessee."

*Id.* at 320, 25 A.2d at 153. The Court also observed, in passing, that "[w]ith or without such a reservation the owner could repair the defect without disturbing the possession of the tenant," since a nuisance of the type involved may be abated by anyone aggrieved thereby. *Id.* at 322, 25 A.2d at 154. *See also J.E.M. Milling Co. v. Gaines,* (1929) 231 Ky. 779, 22 S.W.2d 274, where the Court concluded an owner of property did not owe any duty to repair a hole in the abutting sidewalk left by his tenant, in part because "the sidewalk was not the property of the appellant." *Id.* at 787, 22 S.W.2d at 277.

For the reasons stated above, we conclude that in this case the Hirschauers have failed to show summary judgment was inappropriate as a matter of law or that there were material factual issues—disclosed by the pleadings and materials in response to the motion for summary judgment—requiring a resolution by judge or jury. *Stuteville v. Downing, supra.*

Judgment affirmed.

YOUNG, J., and SHIELDS, J. (sitting by designation), concur.